UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 19-10161-RWZ


JOANNE ELIE

v.

ANDREW SAUL,[1]
Commissioner of the Social Security Administration


MEMORANDUM OF DECISION

July 22, 2020


ZOBEL, S.D.J.

Joanne Elie ("plaintiff" or "claimant") appeals a final decision by the
Commissioner of Social Security ("the Commissioner") upholding an administrative law
judge's ("ALJ") termination of disability benefits, including Social Security Disability
Insurance ("SSDI")  under Title II of the Social Security Act, 42 U.S.C. §§ 401–433, and
Title XVI's Supplemental Security Income ("SSI"), 42 U.S.C. §§1381–1385.

### I.    Background

Ms. Elie is a 29-year-old woman with sickle cell anemia.  Because of her illness,
she was deemed disabled in 2010.  In 2016, the Social Security Administration began a

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Andrew Saul has been substituted for Nancy A. Berryhill as
Commissioner of the Social Security Administration.

1

Continuing Disability Review ("CDR"), which included a hearing before an ALJ on February 28, 2018.  After the hearing, the ALJ found that, as of July 1, 2016, Ms. Elie was no longer disabled under the terms of the Social Security Act and terminated the associated benefits.  On November 28, 2018, the Appeals Council denied Ms. Elie's request for review, making the ALJ's ruling the final decision of the Commissioner for purposes of review.

### a.  Legal Standard

#### i.  The Eight-Step Evaluation during Continuing Disability Reviews

During a CDR under Titles II and XVI, the ALJ follows an eight-step evaluation to determine whether plaintiff remains disabled.  See 20 C.F.R. §§ 404.1594(f), 416.994(b)(5).  After each step, unless the ALJ finds that disability is definitively terminated or continued, she proceeds to the following question.  I summarize them briefly here, elaborating only on those that are relevant to the present analysis:

1) Is the claimant now engaged in substantial gainful activity? [2] See id. § 404.1594(f)(1).  If she is and has completed a Trial Work Period, disability ends.  Id.

2) Does the claimant have an impairment or combination of impairments which meets or equals the severity of an entry in the Listing of Impairments, id. § 404, Subpt. P, App. 1?  See id. §§ 404.1594(f)(2), 416.994(b)(5)(i).  If she does, disability is found to continue. Id.

---

[2] Step one only applies to Title II benefits.

3) Has there been medical improvement, defined as "any decrease in the medical severity of [claimant's] impairment(s) present at the time of the most recent favorable medical decision," id. §§ 404.1594(b)(1), 416.994(b)(1)(i)?  See id. §§ 404.1594(f)(3), 416.994(b)(5)(ii).  If the answer is yes, the ALJ proceeds to step four; otherwise, to step five. Id.

4) Was the medical improvement related to claimant's ability to work?  See id. §§ 404.1594(f)(4), 416.994(b)(5)(iii).  If so, she jumps to step six; if not, to step five. Id.

5) Step Five considers several exceptions that could mandate continuance or termination of benefits, but they do not apply in this case.  See id. §§ 404.1594(f)(5), 416.994(b)(5)(iv).

6) Are all the claimant's impairments (in combination) severe, meaning do they "significantly limit [her] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c)?  See id. §§ 404.1594(f)(6), 416.994(b)(5)(v).  Disability ends if her impairments are not severe.  If they are, the ALJ will determine the claimant's residual functional capacity ("RFC"), "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1).  When the RFC fails to show a "significant limitation of [claimant's] ability to do basic work activities," the disability benefit is terminated.  Id. §§ 404.1594(f)(6), 416.994(b)(5)(v).

7) Considering claimant's RFC, can she return to her past relevant work? See id. §§ 404.1594(f)(7), 416.994(b)(5)(vi).  Disability stops for someone who can do so.  Id.

8) Considering the RFC again, can the claimant do other work? <u>See</u> <u>id.</u> §§ 404.1594(f)(8), 416.994(b)(5)(vii).  If so, disability likewise ends. <u>Id.</u>

### ii.  Standard of Review

The Commissioner's[3] findings of fact are conclusive when they are based on the correct legal standard and supported by substantial evidence.   42 U.S.C. § 405(g); <u>Seavey v. Barnhart</u>, 276 F.3d 1, 10 (1st Cir. 2001).  That standard is "not high" and only requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019) (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  So long as the Commissioner's determinations are supported by substantial evidence, they must be affirmed, "even if the record arguably could justify a different conclusion."  <u>Rodriguez Pagan v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

The reviewing court cannot, however, cherry pick evidence supporting the Commissioner's decision and then determine if it is substantial.  Instead, the court must "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision."  <u>Rohrberg v. Apfel</u>, 26 F. Supp. 2d 303, 306 (D. Mass. 1998) (quoting <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994)).

Information "without a basis in evidence having rational probative force" is not substantial evidence.  <u>Consolidated Edison</u>, 305 U.S. at 230 (defining substantial evidence for purposes of reviewing findings of the National Labor Relations Board).  If

---

[3] After the Appeal's Council's denial of review, the decision of the ALJ became the final decision of the Commissioner. <u>See</u> 20 C.F.R. §§ 404.981, 416.1481.

the Commissioner has committed a factual error in evaluating a claim, the court may decline to uphold her findings.  <u>Manso-Pizarro v. Sec'y of Health and Human Servs.</u>, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting <u>Sullivan v. Hudson</u>, 490 U.S. 877, 885 (1989)).

### b. Facts

#### i. Ms. Elie's Medical History

The main symptom of sickle cell disease is pain, often caused by "vaso-occlusive" crises, which Ms. Elie generally manages at home with the pain medications oxycodone and morphine.  When a crisis is too severe, however, she has to go to the hospital, including in December 2014, February 2015, May 2015, February 2016,[4] April 2017, and December 2017.[3]

She is treated by hematologist Dr. Lillian McMahon.  At an August 15, 2016, appointment, plaintiff said she was having sickle-cell-related pain every two to three weeks, a higher frequency than normal because of the summer heat.  She also was not taking prophylactic medicine for the pain crises because she did not feel "sick enough."  Ms. Elie had a pain crisis in September 2016 during which she reportedly lost fifteen pounds, and which she mentioned at an unrelated gynecological appointment in November 2016.  She returned to Dr. McMahon on November 14, 2016, when she had pain "off and on, relieved by oxycodone, morphine, or ibuprofen, depending on the intensity of her pain."  On February 13, 2017, the doctor noted Ms. Elie had had a mild crisis several weeks prior which was managed with morphine and oxycodone.  Dr.

---

[4] Because she ran out of or could not get her medications.

McMahon also documented that plaintiff was having infrequent vaso-occlusive crises and was still not taking prophylactic medication because she was, according to the records, "not sick enough."  At a follow-up appointment to her April 2017 visit to the Boston Medical Center Emergency Department, Ms. Elie told Dr. McMahon her pain was gradually decreasing after discharge and was at a level three or four out of ten, allowing her to get back to regular activities.  By June 10, she was back to her baseline chronic pain and the doctor advised her to increase her fluid intake during the hot days ahead to avoid more crises.  In both October 2017 and January 2018, plaintiff told Dr. McMahon she was taking oxycodone about three times a month.

Over the course of her treatment, Ms. Elie worked as a cashier, a security guard, and a production assistant.[5]  She discussed that employment with Dr. McMahon.  In August 2015, she said she was able to work with "minimal interference" from the disease.  At later visits, the doctor logged that plaintiff continued to work, including 20-30 hours per week in October 2017 and January 2018.

### ii.  The Disability Proceedings

At the hearing, plaintiff and a Vocational Expert (VE) testified.  The VE concluded that Ms. Elie would not be able to maintain employment if, because of her pain symptoms, she were absent two days per month or 15% of the workday.  Dr. McMahon also provided a treating source statement, which said:

> This is to certify that Ms. Joanne Elie is my patient . . . . She
> has sickle cell anemia, a serious, chronic inherited disorder

---

[5] It was also stated, including in Dr. McMahon's notes, that Ms. Elie worked as a laundromat manager, but she clarified at the hearing that she never held that job, only applied for it.

> of her red blood cells. She has had complications of her
> disease including acute chest syndrome and repeated
> episodes of vaso-occlusive pain crises. She has pain crisis
> up to 3 times in a month and had to be the emergency room
> [sic]. Due to her chronic pain, she will be out of the office at
> least one day in a week if she has a regular job.

In addition, the ALJ reviewed reports from two consulting experts, Dr. Birendra Sinha and Dr. Linda Margiloff, who both found that Ms. Elie's condition no longer met a listing. They also opined she did not need any environmental limitations and could: lift occasionally 20 pounds and frequently 10 pounds; stand and/or walk for a total of at least two hours in an eight-hour workday; and sit for a total of about six hours in an eight-hour workday (among other findings not pertinent to this analysis).  They did not say Ms. Elie would be off task or absent from work as a result of her disease.

In the eight-step evaluation, the ALJ found that Ms. Elie's condition no longer met a listing.[6]  But she did determine that Ms. Elie's current impairments were sickle cell disease and back pain and, in combination, they are severe (step six).  Based on these ailments, the ALJ found Ms. Elie's RFC to be:

> the ability to perform light work . . . except that the claimant can
> occasionally lift and carry 20 pounds and frequently lift and carry 10
> pounds.  She can sit for 6 hours in an 8-hour workday and stand or walk
> for a total of 2 hours in an 8-hour workday. She can occasionally climb
> ramps and stairs, ladders ropes and scaffolds, balance, stop, kneel,
> crouch, and crawl. She must avoid concentrated exposure to pulmonary
> irritants such as dust, gas, fumes and poor ventilation.  She must avoid
> concentrated exposure to hazards, such as heavy machinery, moving
> mechanical parts and unprotected heights, *and must avoid concentrated
> exposure to extreme cold, heat, humidity, and wetness.*

---

[6] The plaintiff does not dispute this finding.

(emphasis added).  Based on this RFC, she determined that there were jobs plaintiff could perform (step eight), and, therefore, terminated Ms. Elie's disability benefits.

## II.   Discussion

The ALJ's decision is not supported by substantial evidence.  First, the consultative examinations on which she relies both have a serious flaw.  Namely, neither doctor found that Ms. Elie would need to limit her exposure to extreme cold or heat.  This patently contradicts Ms. Elie's medical records.  In August 2016, she told Dr. McMahon the summer heat was increasing her pain frequency.  A month later, the same doctor noted that Ms. Elie struggled to work in hot weather.  Plaintiff had to go to the emergency department in December 2017, when waiting outside in the cold for a bus caused a pain crisis.  Finally, in April 2017, she explained to emergency department staff that her pain crisis was triggered by vigorous exercise and the cold weather.  The ALJ herself even incorporated these temperature limitations into the RFC, which restricts exposure to "extreme cold, heat, humidity, and wetness."  It appears to be basic medical knowledge that avoiding such environmental exposure is a way to manage sickle cell disease's symptoms. See Sickle Cell Anemia, Mayo Clinic (last visited Mar. 2, 2020, 11:03 AM), https://www.mayoclinic.org/diseases-conditions/sickle-cell-anemia/diagnosis-treatment/drc-20355882; Living With Sickle Cell Disease: What Helps, WebMD (last visited Mar. 2, 2020, 11:04 AM), https://www.webmd.com/a-to-z-guides/living-with-sickle-cell#1; Complications and Treatments of Sickle Cell Disease, Centers for Disease Control and Prevention (last visited Mar. 2, 2020, 11:06 AM), https://www.cdc.gov/ncbddd/sicklecell/treatments.html.  The omission of this limitation,

8

therefore, calls into question the thoroughness and accuracy of the entirety of the consulting experts' opinions. Indeed, they seem to have focused on what weight petitioner could carry or how long she could sit while ignoring that Ms. Elie's pain crises appear to incapacitate her on a somewhat random, but regular basis.  "[A] reasonable mind cannot accept their opinions as adequate to support" a finding of no disability. Biestek, 139 S. Ct. at 1154 (2019).

At the same time, the ALJ's assessment of Dr. McMahon's statement was erroneous.  In her opinion, the ALJ discounted the treating physician's opinion for three reasons.  First, it was unclear how the doctor reached her conclusions because she cites to no supporting evidence.  This is true.  Second, the ALJ declared the opinion inconsistent with the doctor's own treatment notes (which include "normal physical examination findings") and that the doctor incorrectly stated plaintiff is treated in the emergency department three times a month.  Finally, she believed the opinion did not have substantial support from the other evidence, including other "normal" physical examinations.

There are two primary issues with this analysis. First, the ALJ appears to have simply misread the doctor's letter.  She asserted that Dr. McMahon "erroneously reported that the claimant requires treatment in the emergency department three times a month."  What the doctor said, however, was that "[Ms. Elie] has pain crisis up to 3 times in a month and had to be [in] the emergency room."  That statement does not specify whether the pain crises must be treated at home or at the hospital; instead it

9

merely says that at some point she had to be in the emergency room. Thus, read correctly, this statement is consistent with treatment notes and medical records.

Second, it is unclear what the ALJ means by "normal" physical examinations. Ms. Elie consistently reported sickle cell symptoms and pain crises to healthcare providers. Furthermore, '[o]ccasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability." Jajo v. Astrue, 273 Fed. Appx. 658, 661 (9th Cir. 2008) (quoting Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995), as amended, (Apr. 9, 1996)).

The ALJ must give controlling weight to a treating opinion when it is well-supported by medically acceptable clinical techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2). If she finds it does not meet those criteria, she must still assess its reliability based on 1) the length and frequency of treatment; 2) the nature and extent of relationship with plaintiff; 3) supportability; 4) consistency with the record as a whole; and 5) the doctor's specialization. id. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). Because of the errors discussed above, the appropriate weight was not given to the treating doctor's opinion.

Dr. McMahon wrote that Ms. Elie would be off work once a week. The Vocational Expert testified that absence more than twice a month would make plaintiff unemployable. After assigning appropriate weight to the medical experts, it is clear that the plaintiff is still disabled and that the ALJ's decision is not supported by substantial evidence.

### III.    Conclusion

Plaintiff's Motion to Reverse the Order of the Commissioner (Docket # 13) is

ALLOWED.  Judgment may be entered accordingly.


July 22, 2020                                           /s/ Rya W. Zobel
DATE                                            RYA W. ZOBEL
                                    SENIOR UNITED STATES DISTRICT JUDGE